All rise. This court is now adjourned. Please be seated. Will you call the next case, please? 316-004-A. Mr. O'Donnell. Thank you, Your Honor. May it please the court. Thank you for your time this morning in hearing our case. It seems that the Dead Man's Act has made its way into the appellate court more and more frequently, at least in the last five or six years from my review of case law. I think for the purposes of the Dead Man's Act, I'll address the question of the waiver issue last. I want to address what I think is the most important issue here first from the perspective of our client, Mr. DeMay, and that is the specific question of applicability and the test in the law that requires that the decedent, whose estate raises the Dead Man's Act in litigation, that decedent, in this case the driver, needed to have been in a position under case law to be able to refute the testimony of the adverse litigant, that is here Tom DeMay. You're familiar with the briefs. You know that this is a two-car accident. No other witnesses. Very simple, straightforward facts. No suggestions of a third party's negligence. No suggestion of some other sole proximate cause here other than someone didn't keep their vehicle in their own lane. But here, as I've pointed out in our brief, I think it's important to note here that there's very good, significant circumstantial evidence that this deceased elderly driver, about 86 years old, had very significant difficulty staying awake during the day. So we start with that point, and then we have a driver, Mr. DeMay, who is not elderly, not feeble, has absolutely no difficulties leading up to the seconds before the collision operating his own vehicle. We know under the case law that even assuming the Dead Man's Act applies, hypothetically, Mr. DeMay is going to be able to testify to all those circumstances up until just seconds before the impact. Why is that significant? Because he's going to testify his vehicle was traveling in its own lane, he's having no problems keeping his vehicle in his lane, and that his vehicle had no other mechanical problems. There's no weather issues on the day of this collision. But then we get to what happened in the collision. What do we know happened? There's really no dispute between appellant and appellee here. From the standpoint of what was argued before the court, clearly the elderly individual, from the standpoint of what happened to him, was not properly or accurately controlling his vehicle at the time. Mr. DeMay came up over the rise, the vehicle of the deceased was coming into his lane. The collision ensued at the top of his rise on Route 34. Here, I would ask this court to consider very strenuously here the question that I don't think was addressed very well by Judge Hollerich below, and that is what evidence is there that the deceased would have refuted Mr. DeMay's testimony that he was asleep or that he was slumped off to the side as the vehicle came over the center? If he were alive, could he not have testified, I was wide awake and driving down the middle of my own lane? But he's not alive, Your Honor. Exactly. That's true. I understand your question. But here we have to look at the evidence that we have in the record. Well, I think we have to look at the application of the Dead Man's Act, right? Because sometimes they get unjust results. So how do you get – we're talking about how to get past the Dead Man's Act. Right. And it seems to me in your brief you suggested that, well, he couldn't – they said, gee, the Dead Man's Act only bars testimony that which he could refute, but he couldn't refute anything because he had lived because he was asleep. Right. Well, you're assuming he was asleep because he could have testified, I was not asleep, I was wide awake when this guy came across and hit me. But those are the only facts that we have. And then we have circumstantial evidence, Your Honor, that supports submitting this issue and this question to the jury irrespective of the application of the act. And the reason being is either one of these two fellows did not keep their vehicle in their own lane. Circumstantially, I think that acknowledging in our oral argument back last August of 15 – or excuse me, December with Judge Howard, Judge Howard made the statement that, well, I nap and I sleep and the night goes off from time to time in the afternoons. How is that evidence of negligence? What he didn't consider, I think, on that point very closely at all was very clear and significant circumstantial evidence that the decedent's long-time barber had the decedent himself before this collision admit to her that his family didn't want him driving because he had a tendency to fall asleep in the middle of the day. We have that affidavit in the record. The opinion we had in our oral argument transcribed from Judge Howard, of course, doesn't really go into a lot of analysis of that, but I think here when we look at this circumstantially, even assuming if the act does apply, what is the most plausible or likely reason this collision occurred? I think circumstantially here – Why does he have to be asleep? I mean, isn't it a violation of the Illinois Vehicle Code to not operate your vehicle within a single lane of travel and you can't cross the center line until it's safe to do so? In my mind, isn't that per se negligence? It doesn't matter whether he's 16 years old and wide awake. You can't cross the center line. That's right, and if we assume, Your Honor – We've got to prove who crossed the center line. Well, there was a reconstruction done, and the reconstruction's testimony was that it was inconclusive where exactly the point of impact was. The testimony in the record from the various witnesses that were deposed was that there was a big, massive debris field across the center of the roadway. The testimony from one of the officers was that this collision occurred on a crest, and it's essentially a blind crest. So the difficulty in your case is you cannot prove who crossed the center line. That was Judge Hallert's conclusion. I don't agree with the conclusion. The reason I don't is because we have a perfectly healthy 55-year-old man who is coming upon the crest operating his vehicle with absolutely no difficulties whatsoever, and a man coming the other way who has acknowledged to third parties. That seems inadmissible. Let me just put it. You can't establish the point of impact. Is that correct? The testimony from the reconstructionist was that it's somewhere in the middle of the roadway. There was no specific testimony. They didn't have grinding of yaw marks. There was nothing that established it specifically clearly or what you would call reconstruction. The tables were removed. Right. Unfortunately, Your Honor, the plaintiff was related to the sheriff, and the sheriff did not request the implements be maintained, and by the time the reconstructionists got there, the scene was less than ideal. I mean, if the scene was intact, you wouldn't even need a reconstruction person. They wouldn't have called a reconstruction, certainly had the scene survived. Right, that's true. I mean, I acknowledge that. That's normally the custom. But, Your Honor, back to your question. Here we have circumstantial evidence that the plaintiff, Mr. DeMay, had absolutely no trouble operating his vehicle, but we have an oncoming driver who is the only driver on the road, the only other potential cause for the collision, who has acknowledged substantial difficulties staying awake, and his family doesn't want him driving. Those are statements made to a third party to his longtime partner. Those are admissible statements against interest or admissions in this case. And I challenge that assessment by Judge Hollers below, because he said, I just don't think those are statements against interest. How are they not? If a man admits his family doesn't want him driving, and his statement to the barber is contained in that affidavit, and it was specific that because of his tendency and propensity to fall asleep, they didn't want him driving. But he didn't admit he had fallen asleep while driving before. That was the admission made. He didn't admit that he had fallen asleep while driving in the past. Only that his family… That was his admission. You're correct, Your Honor. His admission to his barber was that his family didn't want him driving because he would fall asleep in the middle of the day and had propensity to regularly do so. So we say, what are all the inferences that can be drawn from the evidence? The assertion by the affilee below, which Judge Hollers agreed with, was this is all conjecture and speculation. I would submit to this panel that if we put these facts before six, well, now 12 people, we certainly will be able to make, I think, a very simple and cogent argument as to what happened. You're probably right about that. Let me ask this. If we apply the Dead Man's Act, as Judge Hollers said, what did your client testify to? Sure, Judge. That's spelled out very clearly in a couple of cases that we cited in a brief. Vollmer v. Henry and Rierich v. Walley. And those cases are good health court cases. And they make very clear, and that's why, again, I raised the issue about what he could or could not observe. But let's say if we assume that that applies, Tom still is able to testify to everything he was doing up until seconds before the collision because that collision occurred at a blind hilltop.  They make very clear to spell out that the Dead Man's Act doesn't apply to everything that he's doing that day. It applies only to that exact narrow circumstance of the collision itself. And here, this is two, three seconds of the collision. Comes over the hill and bam, that was it, okay, according to his testimony. But nonetheless, the testimony he would be able to proffer goes up until the second before his vehicle came on the rise and that vehicle's in his lane. Before he's within sight of the… Right, right, but the sight line here… Okay. …is so narrow. My point is, so he, you'd want him to testify to, well, gee, half a mile before the accident, I'm driving down the lane, I'm feeling great, I'm in my own lane, I've abandoned the speed limit, and everything is going fine. And one, I'm assuming you might get an objection to saying irrelevant. Where he was at half a mile before the accident is not important. It's where he was at the time of the accident that's relevant. Well, the way I read Rear Act and Balmer v. Henry, Your Honor, it seems pretty clear that those appellate court opinions, one of those cases, of course, I cited for the proposition that Dead Man's Act had been waived by the filing of the whole transcript of the deceased when he testified. That was the Balmer case, but I'll get to the waiver issue in a second. But Balmer and Rear Act v. Lally have made very clear that at least they deem that testimony relevant, that the driver against whom the Dead Man's Act is asserted is able to testify to all circumstances that are not within the, quote, unquote, deceit and could refute presence. And that's the test. I know the statute says presence, but the case law has defined it to say that the deceit had to have been in a position to refute. And that's my argument here about the inapplicability, because we don't have a case that I could find, Your Honor, in searching for an appellate court that says it addresses these facts, where we know or we believe from the testimony that the deceit and driver was asleep or incoherent at the time of the collision.  No case describes the circumstances of the deceit being asleep, or I acknowledge your question. But your client can't testify he was asleep, right? Because the worry about a decedent could have said, no, I was not asleep. Well, I analogize this situation, Your Honor, to those cases where they make very clear that the decedent was unable, was not looking in the direction of where the collision happened or was not in, was not. How in the world could somebody testify, you know, the opponent, that the decedent was looking somewhere else, because obviously the decedent, were he alive, could have said, no, I was looking right where I was supposed to be looking. I acknowledge your question. If you look at the Balma versus Henry case, that was the case that addressed the waiver. I'll talk about waiver in a second. But in that case, the decedent died after the accident. He was given a deposition. He talked about where he had been looking. And the appellate put him on his way to say, look, he described what his focus was at the time his vehicle had been hit in what was a disputed collision circumstances involving three vehicles, not two, is here. And that was a deposition in the case. Deposition that was filed in the case by the movement. You don't have that here. Well, Your Honor, if you look at it on the waiver issue, on that issue, the case law makes very clear, you know, and I can give the court another side case going back to the early 90s called Grolar versus Anderson. It's 222, only up third, 880. That's one of these earlier waiver cases. Counsel, it's too late. Thank you. In that case, the holding was, yeah, the decedent had testified in a deposition, but the holding and the statute in the case law makes very clear that it's when the representative introduces testimony to the occurrence from any witness. In our case here, our argument for waiver is based upon the fact that in the filing of the summary judgment motion, they filed our client's testimony, Tom DeMays. He is any witness. And if they open that door, I think it's very clear under Balma and in the cases that precede that, they have opened that door. They didn't excerpt out the testimony that they said would be otherwise admissible. They just said, look, here's what happened in this accident. Here's what he says. It's all barred by the dead man's act. These cases say that that is a waiver. And so that's the last point of our brief. My final point here, though, today, Your Honors, is that here we have circumstantial evidence. Even if you assume this act applies. I want to ask a question. The circumstantial evidence you're talking about, partly it's from these other things of the decedent? Right. Yes. How do you describe that? Character, reputation, what? No, I think to the barber, he acknowledges shortcomings in driving perceived by his family members due to propensity to fall asleep. So ability to drive safely at a minimum. So under the code of evidence in Illinois, how's that coming in? What rule are we talking about? There's double hearsay in that statement. No, it's a statement by the party. This is all stated by him, by the deceased himself. No, no, no. We don't want you to regret that he fell asleep. He acknowledges to his barber that he shouldn't be driving, that they believe that, that he shouldn't be driving. Now, secondly, after the collision occurs, his daughter, the point of representative, says he falls asleep during the day. This has happened before. Now, circumstantially, I don't think it's going to be a stretch of the imagination for a jury to conclude what happened. I think if they want to argue, hey, this. I'm asking you, what rule of evidence is this coming in? Is this character? The testimony by. And is it a viable evidence in Illinois? You're talking about the lack of careful driving habits? The testimony regarding, admitted by the special representative of his daughter, I think is just, again, a statement against interest, that he had a propensity to fall asleep and goes to his ability to operate a vehicle. We cited the evidence case that's in the. I mean, there are a number of, you know, it's not mentioning it, but there are a lot of cases dealing with when and where, when or when you can or you can't put on careful habits and, and reputation for safe driving. Let me, let me put it in another. Okay. So I go out and tell my barber, hey, my colleagues in the Supreme court all think I'm crazy. Now, is that, is that a statement, is that a statement against interest by me or a statement about the lack of insight by my colleagues in the Supreme court? Well, I didn't hear a very specific statement. His family doesn't want him driving. And then we have an admission by his daughter after the collision that he would fall asleep and had some medical concerns or medical problems. And he'd fall asleep during the day. I mean, I, to answer your question, judge, I think there are admissive statements that go to his capability to operate the vehicle. I mean, granted he had a driver's license. We acknowledge that, but he's also 86 years old. And we otherwise have a healthy, safe driver coming the opposite way on the highway. I understand your question about careful habits. I think it's an admission by her to go into the quality of his, his physical competency to operate a vehicle. Very simply, I don't think we need to prove habit evidence, which was the argument advanced below. I don't think we have to prove that. This is a, it's an admission by the dog. It is. She's the party and we have his admission to his body. But let me just ask you, Your Honor, before you make your decisions in this case, read very carefully the fourth district's opinion evidence, because they made very clear that in that circumstance, the decedent had died after the accident. Before that, before he passed the subsequent accident, he said he fell asleep at the time of the collision. The trial court granted summary judgment. The appellate court reversed and said, wait a minute. He had been having heart troubles for 7 to 10 days. His statement that he fell asleep clearly creates an issue of fact sufficient to submit this question to the jury, since he knew he was having medical problems 7 to 10 days before this and continued to drive and not seek medical care. So what did this decedent say after the crash but before he died? There's nothing that he said. It's what he said to his barber before. His family desired that he not drive. Doesn't that distinguish the case you just discussed? I think the statement, the admissive nature of the statement, that he's not supposed to be driving is still the same statement. I mean, to me, I think we have a significant admission here that was made. No, we don't. Thank you. Go ahead. Yep. Thank you. I just ask that the order be reversed in the case be remanded for trial. Thank you. All right. Thank you. Mr. Patton? Well, certainly, before I begin here, I guess this would make anyone wary to ever come out with a statement of fact or a statement of opinion at the risk of it coming out years later and being used against you. This is not an admission in this case. You have a barber who is, according to her testimony, told that my family is concerned about my driving because I've been known to fall asleep. But there is never any statement that I fall asleep while driving or that they said I fall asleep if we want to go into hearsay upon hearsay. There is no evidence from any medical provider that this man was diagnosed with narcolepsy or any other sleep disorder. There is no admissible evidence from any source that he was habitually sleeping. Habit testimony is admissible only if there is a reflexive or automatic response to something that is regular. There is nothing here to even suggest that he's ever fallen asleep while driving in the past. So that's a non-starter. The other three leading paragraphs in the complaint are failure to reduce speed, crossing the center line, and failure to keep a proper lookout. The Dead Man's Act applies in this case, and Mr. Domain admitted himself that there were no other witnesses. His deposition was cited for that purpose. And once you cite any part of a deposition under Rule 207, the entire deposition has to be attached. That was a mistake I made many years ago when I attached excerpts and I got yelled at by Attorney Jack Brooks in Rock Island. I never made that mistake again. You include the entire deposition, but we're not offering that deposition to adopt an unreal version of facts that Mr. Domain says occurred in this case. We've never waived the Dead Man's Act. He did admit in his deposition that there was no witness to this and that it was the two or the only witnesses to what occurred. The Dead Man's Act clearly applies in this case. And for that reason, there just is no evidence to show that, or there's no circumstantial evidence or anything that is. If I might, and I know maybe that's your style, if there's a microphone there, we've got. I'm sorry, Judge. Get away. We've got clerks sitting in around the state that are going to be listening to this. So for that purpose, I don't want to cramp your style, but there's some people in our offices that are going to want to hear this. I'm sorry, Your Honor, I don't think. You don't have to stand right there. I don't think as well that I'm standing in one place. But I'm sorry about that. But we have here the only physical evidence that would not be barred by the Dead Man's Act since the accident reconstructionist could not do anything in this case to decide exactly what happened, and they could not reconstruct the accident. The only thing that stands out, the only admissible evidence, are the photographs that were taken by the coroner in this case. And those photographs do show the majority of the debris in my client's lane of traffic, which was the westbound. Actually, at that point on 34, you're going southwest toward Galesburg. At any rate, whatever those photographs show, you don't have an expert opinion. One way or the other. I don't want anybody saying that the accident occurred in this lane or this lane. That's correct, Your Honor. There is no witness. There is no credible reconstruction testimony. Everyone has admitted that they're not able to, with a reasonable degree of certainty, decide what lane the accident occurred in. The only evidence out there are the photos themselves. So we have a situation where the claim in the case in Balma is being used to say that we've somehow waived. But keep in mind, Balma, that involved a three-car accident. There was the motorist that was stopped, and he was rear-ended and forced out in front of another vehicle. He testified in a deposition. And as we all know, under the Supreme Court rules, I believe it's Supreme Court Rule 212, a deposition, even if it's not for the purpose of perpetuating testimony, can be used for any permissible purpose allowed under rule. And the permissible purposes are, number one, admissions. But our admissions, they don't necessarily have to be against interest. All they have to do is be relevant. And this man testified in that case. He attached his deposition to his motion. That brings in everything that occurred, okay? That was his own testimony. And so that could be conceivably used by the other side where he testifies. In this case, Mr. Webber never survived to give a deposition or to otherwise talk about what happened in this accident. There is nothing out there that he did, and he did not offer his own testimony, which would be a waiver. No question about it. In this case, Mr. DeMays' transcript had to be offered because under 207, Supreme Court Rule 207, the court will not consider an excerpt. It has to have the entire deposition. Was the deceasing pronounced at the scene or did he die later? No, he was pronounced at the scene. The rescue department, Janice Steer, her deposition transcript is in there. He was not conscious, I believe. As I recall her testimony, there was never any responsive. Okay, well, the reason I'm asking is so you got a person dead at the scene, and then the sheriff just comes and cleans up the accident scene. Yes, I believe Mr. DeMays' brother-in-law was the sheriff of Bureau County. I don't know the extent to which that affected the ability of the rescue team from Sheffield. I think everything was still there. I think before the state police got there, as usual, the state police typically do a reconstruction at a death scene. I don't believe Officer Krueger had adequate data or physical evidence with which to do a reconstruction report at that time. We do have the photographs from the corner, which I say do show the majority of the damage in my client's lane of travel, which would be the westbound. What rules of Illinois evidence would allow the circumstantial evidence your point talks about to be admissible? Well, if there were habit testimony, of course, habit testimony would allow, if you have a reflexive, regular type of conduct. Would this be a 406 kind of admissible evidence in this case? Your Honor, I don't have the rules of evidence now. It used to be, I think, before everything was, you know, we more or less adopted the federal numbering system, habit evidence was still not admitted in most cases, as I recall, unless there was a death or whether habits would become important because of the paucity of other evidence. That was my impression. But the one thing that survives with habit evidence, it has to be regular, systematic, reflexive. And there is no testimony in this case that Mr. Weber fell asleep while driving or routinely fell asleep while driving or fell asleep in other critical situations. The only thing that there is... You're wondering again and talking that way. I'm sorry, Judge. That's all right. It's just that I also hear the microphone. Right. I don't know of any case. We've cited cases to the court. You know, the Evans case, I believe, was a similar situation to the Rilak case. We cited that in the brief. In evidence, he admitted post-accident. He was still alive after the accident, and he admitted to someone post-accident that he fell asleep at the time or shortly before the accident. He had had some cardiac problems, apparently. But none of that exists in this case. There is no evidence other than through the barber that he said, My family is concerned about me driving because I've been known to fall asleep. That just doesn't rise to the level here of being an admission. The circumstantial evidence under the Illinois rules, could it be admissible for reputation or character? I don't believe that reputation or character has any relevance in this case. His character certainly is not at issue. His habits would be if they were systematic and if there was some testimony or if there was testimony from an expert witness saying that this guy's medical condition lent itself to some sleep disorder like narcolepsy or something else, and he'd been advised not to drive because of this sudden tendency. Do you think that would be admissible? Your Honor, I believe that if there was an expert or a family doctor who said, Look, I've advised this guy not to drive. I know he has a condition that is unpredictable and can cause him to fall asleep suddenly in a potentially calamitous situation. I think that would be admissible. But we don't have, in this case, there's no expert testimony. All there is is a statement by a barber that did not say that because I fall asleep while driving, my family asked me not to drive. It doesn't say that. All it says is there's concern. I'm concerned about elderly members of my family driving also because of the possibility that they might someday fall asleep while driving. But none of them ever have, and they've all died from other causes. So, I mean, this is just rank speculation that's inviting the jury to surmise or engage in conjecture regarding what really happened here. And I think the whole reason for the Dead Man's Act is that it's there to prevent a fraud upon the court, and it's there to keep the jury from guessing on a one-sided version. And it must be applied if the decedent would be able to refute, if he'd be in a position to refute what the other side says. Okay.  Thank you. Yeah. Mr. McDonnell, is there a rebuttal? Sure, briefly. Well, I've received mine a lot of times before. I apologize. As to your point, there's testimony there as well, Judge, when you get to this question about all the circumstantial evidence. To tie it all together, the test is to throw this case out at summary judgment. Even if you assume the Dead Man's Act applies, this all has to be speculative and conjecture. We've got the EMT who said after the accident, she learned that the deceased had fallen asleep while driving before.  Is that admissible? I need a poker face. If you put all this together, we all know here what happened. It's just that this act that is designed to prevent it. What we know happened is the scene of the accident was not maintained, and that's the reason you're all sprinkling here. I mean, that's the whole reason your case is compromised. Because if you could establish by an accident reconstructionist that the accident occurred in the lane of travel of your client, then they would have to show their client died, and it was an act of God and not negligence. I'm sorry. I'm just going to say this. The act was passed to be fair to decedents. It was not passed to be beneficial to elderly drivers who shouldn't be driving. It was not passed to be beneficial to insurance companies. It was passed so that older people would not be defrauded by financial type of people. Dead people, young people died. But if you look at the purposes for which the act was passed, there was not discussion about automobile accidents. It was discussions about protecting the estates and protecting the elderly. Now, from my standpoint here, I think what's important is that I think we have a lot of circumstantial evidence. Even if you assume the act applies, there's a lot of circumstantial evidence. But how does that circumstantial evidence get in in Illinois? I mean, you know, you claim it's a 406 habit information. I don't necessarily believe it has to be deemed to be habit. What we know is this barber saw him for years fall asleep in the middle of the day in the barber chair. During the day, he would have to wake him up so he could get up. How does that come in in the law of evidence? Well, I think clearly a jury could conclude because he would know. We're not there at the jury level yet. It's about what comes in and what stays out. How do you get it in? What's the jury going to hear? They're going to hear that his barber would observe him fall asleep during the day regularly and she'd have to wake him up to cut his hair because he'd come in the chair and fall asleep in the middle of the day. This accident happened in the middle of the day. How does that evidence come in? Under what theory of evidence does that come in? I think, Your Honor, that someone who has a propensity to fall asleep in the middle of the day, a jury, excuse me, that propensity goes to his fitness and ability to operate the vehicle. I don't necessarily think it's reputation or character, but I think it goes to his competency to be able to operate a vehicle. If you can't stay awake in the middle of the day, should you be out driving around? I mean, it may not be. Habit suggests intention and something the person does repeatedly on their own. Here, what this fellow did, it's nothing he could control. He was 86 and he couldn't stay awake in the day. Circumstantially. What hold do you put this in as evidence? Because you want it in, but I don't see how it comes in in the rules of evidence. I think when you combine it with the fact that his daughter acknowledged he'd fall asleep during the day, combined with the fact that he advised his father that the family doesn't want him driving, who knows whether or not he should be driving? It's his family. They say they don't want him driving. She's the only person that lived anywhere near him. She's the only one that could have made that statement. You've got to put it in an evidence box. What box in the law of evidence are you putting it in? Because I don't see it. Well, it would essentially be the opposite of careful habits. I mean, we're not putting on careful habits evidence of him. We're putting on evidence of his propensity to fall asleep during the day. I mean, it's a physical. What if it's a situation where a 16-year-old boy is getting his hair cut and he says to his barber, you know, my mom said if I text and drive one more time, she's going to take my license. Does that come in as an admission if he's killed in an accident? Well. My mom doesn't want me driving. She caught me texting and driving. She says if I do that one more time, she's going to take my driver's license. These are not admissions against interest. They're just not. I think this is established evidence of a physical propensity he has to fall asleep. Whether we call it habit or not, it goes to his, it's what his physical situation is. How is this any different than he's missing an eye and he has a restriction on his driver's license that he has to wear glasses? I mean, it's similar. I mean, I think it's very similar. Here it's a physical incapability he has to stay awake. I can't find a case on it in the appellate courts. I mean, I couldn't. I searched and searched and searched under the term sleep, and I didn't, you know. I came up with the Evans case. I, anecdotally, you know, my former life had a guy that was a police, he'd sit in a stoplight, this guy's drunker than six people, bam, gets hit in the fanny by three kids in a car. They're looking somewhere else, knocking to the intersection. This guy was drunk, had no business driving, but he didn't cause the accident. Well, if he didn't have a memory, then maybe the dead man's active plight. I don't know. He was, he was. I understand your point. And so, I mean, sometimes in the, I didn't seem to recall, but it seems like you're trying to apply common sense to the law, and that usually works. I don't think you can call this habit here in this case, because habit implies that he does something voluntarily. What he may do is just go out and drive, but she denied it. She never told him that. That's fine. I think that's for the jury to test. But the fact that he has a physical condition that caused him to fall asleep suddenly, which is hard and fast evidence from his barber, and acknowledged by post-accident, the day of the accident, by the daughter, to the coroner, I think it's a physical condition. I think it goes to his physical abilities. And I think the jury is entitled to test that. Now, just to end, last minute, the waiver question, I acknowledge what he says about Rule 207, but here those cases are very clear that if you put on testimony from any witness, that's why I mentioned that case of Groar. It's a 1991 case. I'll give the court the sighting. It's 222 Illinois Ave. 3rd, 880. That case says the bottom. But in this case, he's saying, Here's the testimony that I know the plaintiff is going to offer, and I want it barred. So you're saying by putting on, by showing the judge the evidence, the testimony that you want barred by the Dead Man's Act, is a preemptive strike that you've waived the Dead Man's Act? If you read these cases, I didn't come across these cases, Your Honor, until after we filed the motion. I filed my response and then did some more research. I mean, I wasn't even familiar with the whole concept of waiver until I got into this issue in this case. Those cases say that if you put on testimony from any witness, it's not limited to putting on the testimony of the deceased. The cases are very clear on that, on the waiver. How can you file a motion to bar a testimony if you don't explain to the court, Well, Judge, the Dead Man's Act bars this testimony. Well, what testimony? Well, I can't tell you because if I told you I'd be waiving the Dead Man's Act by putting on the testimony that I'm asking to be waived. I understand. I understand that. Here we had ten other depositions. I don't think we have that concern in this case because of the number of other depositions of all the EMTs and other people who came. I appreciate your question. I appreciate your time, and I ask you to consider the purposes of the act when you make your ruling and consider the summary judgment standard, and I think here we have very significant circumstantial evidence that tells us exactly what happened. Thank you. All right. Thank you, Mr. O'Donnell. Thanks, Mr. Patton. This matter will be taken under advisement. Written disposition will be issued. Right now we'll be in a brief recess for a panel change.